RAHUL RAVIPUDI, ESQ., NV Bar No. 14750
*ravipudi@psblaw.com*
IAN SAMSON, ESQ., NV Bar No. 15089
*samson@psblaw.com*
ADAM ELLIS, ESQ., NV Bar No. 14514
*ellis@psblaw.com*
**PANISH|SHEA|BOYLE|RAVIPUDI LLP**
8816 Spanish Ridge Ave.
Las Vegas, Nevada 89148
Tel: (702) 560-5520
Fax: (702) 975-2515

KHALDOUN A. BAGHDADI, ESQ., CA Bar No. 190111
*kbaghdadi@walkuplawoffice.com*
VALERIE ROSE, ESQ., CA Bar No. 272566
*vrose@walkuplawoffice.com*
KATHERINE S. CONNOLLY, ESQ., CA Bar No. 343524
*kconnolly@walkuplawoffice.com*
**WALKUP, MELODIA, KELLY & SCHOENBERGER**
650 California Street, 26th Floor
San Francisco, CA 94108-2615
Tel: 415.981-7210
Fax: 415-391-6965
(To be Admitted *Pro Hac Vice*)

Attorneys for PLAINTIFFS

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| E.A., by and through his Guardian Ad Litem CHRYSTAL WARREN,  D.J., by and through his Guardian Ad Litem IRENE JOW, G.L., by and through his Guardian Ad Litem GRACE LACUESTA, <br><br> Plaintiffs, <br><br> v. <br><br> CLARK COUNTY SCHOOL DISTRICT, JONATHAN CRONIN, JOHN ANZALONE, MARBELLA ALFONZO and DOES 1-50, <br><br> Defendants. | Case No. <br><br> **COMPLAINT** <br><br> [JURY DEMAND] |

**INTRODUCTION**

Plaintiff E.A., by and through his Guardian Ad Litem CHRYSTAL WARREN, D.J., by and through his Guardian Ad Litem IRENE JOW, G.L., by and through his Guardian Ad Litem GRACE LACUESTA (hereinafter "Plaintiffs") alleges as follows:

**PARTIES**

*Plaintiff E.A.*

1.      Plaintiff E.A. is a person with Intellectual Disabilities, Attention Deficit Hyperactivity Disorder ("ADHD") and Severe Emotional Disturbance and at all relevant times has been a resident of Clark County, Nevada.

2.      Chrystal Warren ("WARREN") is the natural mother of Plaintiff E.A. and a resident of Clark County, Nevada. She brings this action on behalf of her son E.A., as his guardian ad litem.

3.      Plaintiff E.A.'s date of birth is December 14, 2001, and at all times relevant to the allegations herein, Plaintiff E.A. was a minor special education student at Sierra Vista High School ("SVHS") entrusted to the care of Defendants.

4.      At all times relevant to the allegations herein, E.A. had an Individualized Education Plan ("IEP") and qualified for and received special education services from CCSD in connection with his intellectual disabilities and special needs.

5.      On various dates on or around between 2017-2019, Defendant CCSD assigned E.A. to Defendant CRONIN's classroom.  CCSD assigned E.A. to be taught by and receive mentoring services from CRONIN in connection with E.A. disabilities and special needs and to be supervised and coached by CRONIN as a member of SVHS's wrestling team.

*Plaintiff D.J.*

6.      Plaintiff D.J. is a person with Autism Spectrum Disorder and intellectual disabilities and at all relevant times has been a resident of Clark

County, Nevada.

7.     Irene Jow ("JOW") is the natural mother of Plaintiff D.J. and a resident of Clark County, Nevada. She brings this action on behalf of her son D.J., as his guardian ad litem.

8.     Plaintiff D.J.'s date of birth is January 5, 2004, and at all times relevant to the allegations herein, Plaintiff D.J. was a minor special education student at SVHS entrusted to the care of Defendants.

9.     At all times relevant to the allegations herein, D.J. had an Individualized Education Plan (IEP) and qualified for and received special education services from CCSD in connection with his intellectual disabilities and special needs.

10.     On various dates between 2018-2019, Defendant CCSD assigned D.J. to receive mentoring services from Defendant CRONIN in connection with his disabilities and special needs and to be supervised and coached by CRONIN as a member of SVHS's wrestling team.

### Plaintiff G.L.

11.     Plaintiff G.L. is a person with ADHD and Intellectual Disabilities and at all relevant times has been a resident of Clark County, Nevada.

12.     Grace Lacuesta ("LACUESTA") is the natural mother of Plaintiff G.L. and a resident of Clark County, Nevada. She brings this action on behalf of her son G.L., as his guardian ad litem.

13.     Plaintiff G.L.'s date of birth is November 5, 2002, and at all times relevant to the allegations herein, Plaintiff G.L. was a minor special education student at SVHS entrusted to the care of Defendants.

14.     At all times relevant to the allegations herein, G.L. had an Individualized Education Plan (IEP) and qualified for and received special education services from CCSD in connection with his intellectual disabilities and

special needs.

15.     On various dates between 2017-2019, Defendant CCSD assigned G.L. to CRONIN's classroom.  CCSD assigned G.L. to be taught by and receive mentoring services from CRONIN in connection with G.L.'s disabilities and special needs and to be supervised and coached by CRONIN as a member of SVHS's track and wrestling teams.

### *Defendants*

16.     Defendant CLARK COUNTY SCHOOL DISTRICT ("CCSD") is a public entity duly incorporated and operating under Nevada law as a public school district.

17.     Defendant Jonathan Cronin ("CRONIN") was at all times relevant herein, employed by Defendant CCSD as a teacher and coach at SVHS in Las Vegas, Nevada.  All actions by Defendant CRONIN alleged herein were taken under color of state law and in the course and scope of his employment with Defendant CCSD.

18.     Defendant John Anzalone ("ANZALONE") was at all times relevant herein, employed by Defendant CCSD as Principal of SVHS. All actions by Defendant ANZALONE alleged herein were taken under color of state law and in the course and scope of his employment with Defendant CCSD.

19.     Defendant Marbella Alfonzo ("ALFONZO") was at all times relevant herein, employed by Defendant CCSD as Assistant Principal of SVHS. All actions by Defendant ALFONZO alleged herein were taken under color of state law and in the course and scope of her employment with Defendant CCSD.

20.     On information and belief, ANZALONE, ALFONZO and other CCSD administrators and employees were responsible for the training and supervision of school district staff at SVHS including CRONIN and for ensuring compliance with state and federal laws.

21.    Plaintiffs are unaware of the true names and capacities of the defendants sued herein as DOES 1-50.  Plaintiffs pray for leave to amend once their identities are discovered.

**JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

22.    This court has original jurisdiction over Plaintiffs' claims for relief pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). This court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

23.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Clark County, Nevada.

24.    This case arose in Clark County, Nevada, and, pursuant to Rule 1-6 of the Local Rules of the District of Nevada should be assigned to the Southern Division of the District of Nevada.

**GENERAL FACTUAL ALLEGATIONS**

25.    During the 2016/2017 through 2018/2019 school years, CCSD employed CRONIN as an "ARL, SED" and assigned CRONIN to teach severely disabled students pursuant to CCSD's Alternative Route to Licensure (ARL) program as well as to mentor and coach disabled students through SVHS's track and wrestling programs.

26.    On information and belief, during the time CCSD employed CRONIN as an SED, ARL teacher, mentor and coach at SVHS, CRONIN routinely subjected G.L., E.A., D.J. and other disabled students to sexual molestation, harassment and assault, which included sexual, physical, emotional and psychological abuse. The mistreatment and abuse of the Plaintiffs by CRONIN was based upon and in response to their disabilities.

27.    Throughout this time, Defendants ANZALONE, ALFONZO and other

SVHS administrators and employees knew and/or reasonably should have known of CRONIN's ongoing sexual abuse of disabled students under his care, including Plaintiffs.

28. On information and belief, CRONIN's sexual abuse of E.A., D.J., G.L. and other disabled students at SVHS was ongoing, open and obvious to those employees responsible for student supervision, including Defendants.

29. On information and belief, prior to April, 2019, victims, staff and/or witnesses reported CRONIN's inappropriate behavior and sexual abuse of E.A., D.J., G.L. and other disabled students to CCSD administrators and employees.

30. On information and belief, prior to April, 2019, CCSD employees and administrators, including Defendants JOHN ANZALONE and MARBELLA ALFONZO, were aware of reports by student I.M. that CRONIN was sexually abusing and harassing disabled students at SVHS.

31. On information and belief, despite their knowledge of CRONIN's misconduct, Defendants ANZALONE, ALFONZO and other SVHS administrators failed to investigate and discipline CRONIN to deter him from committing further sexual abuse of students including Plaintiffs.

32. On information and belief, Defendants ANZALONE, ALFONZO and CCSD repeatedly failed to comply with state laws and district policies regarding the prompt documentation and reporting of CRONIN's sexual abuse.

33. Defendants knew or reasonably should have known that disabled students at SVHS subjected to CRONIN's sexual abuse, including Plaintiffs, were unlikely by virtue of their status as disabled minors, to report the sexual abuse to their parents, guardians, and/or law enforcement.

34. On information and belief, Defendants ANZALONE, ALFONZO and other SVHS administrators and employees concealed information regarding CRONIN's sexual abuse of disabled students in his care, including Plaintiffs.

Defendants, and each of them, failed to inform and/or warn other victims, including Plaintiffs, of CRONIN's propensity to sexually abuse students, failed to inform parents and guardians of students including WARREN, JOW and LACUESTA, and failed to report the suspected sexual abuse to law enforcement.

35.     CCSDPD finally initiated a criminal investigation in April 2019, but by then CRONIN's sexual abuse, molestation and harassment of students including Plaintiffs had been ongoing for *years*.  On information and belief, this investigation was only initiated after Las Vegas Metro Police inquired about student I.M.'s allegations that CRONIN was sexually abusing disabled students.

36.     During CCSDPD's subsequent criminal investigation, CRONIN's co-workers, Plaintiffs and other student victims reported to authorities that CRONIN repeatedly engaged in sexual misconduct with students including but not limited to grabbing students' penises, rubbing students' groins, twerking on students' groins, frequently removing his shirt while inside the classroom, making sexual faces to students, showing students naked pictures on his phone, simulating sexual movements and gesturing pelvic thrusts on his desk while making sexual sounds, instructing students on sexual body positions and techniques, telling students he wanted to have sex with their mothers, smacking students' on their butts, sharing details of sexual experiences with students during class, giving students "wet willies," and making inappropriate sexual comments and physical threats to students.

37.     On April 10, 2019, CCSDPD determined there was probable cause that CRONIN committed the following criminal acts: multiple counts of Open and Gross Lewdness (NRS 201.210) against Plaintiffs G.L. and E.A., multiple counts of Sexual Misconduct (NRS 201.540) against Plaintiffs G.L. and E.A. and Obscenity (NRS 201.235) against Plaintiff E.A..

38.     On information and belief, CRONIN was arrested on April 11, 2019

and in January, 2020 he was charged with multiple counts of engaging in a sex act with Plaintiffs E.A. and G.L., open and gross lewdness against Plaintiffs E.A. and G.L. and child abuse, neglect or endangerment involving Plaintiffs E.A. and G.L..

39.     In April, 2019, JOW notified Defendant ANZALONE that Plaintiff D.J. reported he was sexually abused by CRONIN.  Despite receiving D.J.'s report, ANZALONE failed to document or investigate D.J.'s report as required and CCSDPD did not interview D.J..

40.     In October, 2019, JOW notified the District Attorney that CCSDPD had still not interviewed D.J..  At the direction of the District Attorney, CCSDPD finally conducted D.J.'s interview on October 29, 2019.

41.     On or about May 2020, CRONIN entered a guilty plea to the crime of child abuse, neglect or endangerment, NRS 200.508, was ordered to register as a sex offender and was prohibited from contacting minors.

## ABUSE PERPETRATED AGAINST THE MINOR PLAINTIFFS
### *Plaintiff E.A.*

42.     Plaintiff E.A. routinely experienced sexual abuse by CRONIN at school, which included but was not limited to CRONIN grabbing E.A.'s penis, rubbing E.A.'s inner thigh up to his groin, touching E.A.'s groin, twerking on E.A.'s lap, showing E.A. nude pictures on his phone, demonstrating to E.A. how to have sex by simulating pelvic thrusting onto his desk, telling E.A. what the vaginas of women felt like when he had sex with them, whispering in E.A.'s ear and asking him if he would "f**k" the female students in the room and telling E.A. that he was sleeping with the mothers of his athletes.

43.     On one occasion during the 2018/2019 school year when CRONIN grabbed E.A.'s penis, E.A. responded by physically attacking CRONIN.  In response to this incident, SVHS administrators suspended E.A..

44.     Because of the nature of CRONIN's abuse, which occurred in the school

setting and while CRONIN professed to be teaching, mentoring, and coaching E.A., and because of E.A.'s age, disabilities and embarrassment, E.A. did not immediately report CRONIN's abuse.

45.    As a result of being sexually abused at school, E.A. experienced shame, embarrassment, confusion, fear and anger and exhibited severe anxiety, stress, aggression, frequent nightmares, sleep disruption and regression in his functioning.

46.    E.A. continues to experience extreme anger, anxiety, stress and fear as a result of the misconduct of the Defendants, and each of them, including CRONIN's sexual abuse and CCSD, ANZALONE and ALFONZO's failure to act, intervene, or prevent the abuse.  As a result of the conduct of Defendants and each of them, E.A. continues to struggle with significant anxiety and anger issues, is unable to sleep more than 3-4 hours per night, frequently self isolates and is unable to work around other males. The severe abuse of E.A. as herein alleged has and will continue to cause permanent psychological harm.

47.    As a proximate result of the actions of Defendants, and each of them, E.A. has suffered unjustifiable physical pain and mental suffering.  As a result of Defendants' conduct, E.A. has required and will continue to require ongoing psychological treatment to address the sexual traumas he has experienced.

48.    Because of E.A.'s disabilities, his age at the time of the abuse, and the nature of CRONIN's abuse as described herein, E.A. does not have the capacity to recognize that he is injured, and that his permanent injuries were caused by Defendants' conduct.

### Plaintiff D.J.

49.    Plaintiff D.J. routinely experienced sexual abuse by CRONIN at school, which included sexual, emotional and psychological abuse including but not limited to CRONIN rubbing D.J. on his butt, forcing D.J. onto the ground and laying his body on top of D.J. inside a classroom while other students watched a

movie and putting his face and nose against D.J.'s stomach and sniffing his body up to his face.

50.     Because of the nature of CRONIN's abuse, which occurred in the school setting and while CRONIN professed to be teaching, mentoring, and coaching D.J., and because of D.J.'s age, disabilities and embarrassment, D.J. did not immediately report CRONIN's abuse.

51.     As a result of being sexually abused at school, D.J. experienced shame, embarrassment, confusion, fear and anger and exhibited severe anxiety, stress, aggression, frequent nightmares, sleep disruption and regression in his functioning.

52.     D.J. continues to experience extreme anger, anxiety, stress and fear as a result of the misconduct of the Defendants, and each of them, including CRONIN's sexual abuse and CCSD, ANZALONE and ALFONZO's failure to act, intervene, or prevent the abuse.  As a result of the conduct of Defendants and each of them, D.J. continues to struggle with frequent nightmares and significant anxiety, anger, depression, PTSD, nightmares and insomnia. The severe abuse of D.J. as herein alleged has and will continue to cause permanent psychological harm.

53.     As a proximate result of the actions of Defendants, and each of them, D.J. has suffered unjustifiable physical pain and mental suffering.  As a result of Defendants' conduct, D.J. has required and will continue to require ongoing psychological treatment to address the sexual traumas he has experienced.

54.     Because of D.J.'s disabilities, his age at the time of the abuse, and the nature of CRONIN's abuse as described herein, D.J. does not have the capacity to recognize that he is injured, and that his permanent injuries were caused by Defendants' conduct.

### Plaintiff G.L.

55.     Plaintiff G.L. routinely experienced sexual abuse by CRONIN at school, which included sexual, emotional and psychological abuse including but not

limited to CRONIN grabbing G.L.'s penis, touching G.L.'s groin, twerking on G.L.'s lap, showing G.L. nude pictures on his phone, demonstrating to G.L. how to have sex by simulating pelvic thrusting onto his desk, telling G.L. what the vaginas of women felt like when he had sex with them, whispering in G.L.'s ear and asking him if he would "f**k" the female students in the room, telling G.L. that he was sleeping with the mothers of his athletes, giving G.L. a "wet willy" in his ear and threatening to have G.L. beaten up for reporting CRONIN's abuse.

56.   On at least one occasion during the 2018/2019 school year, G.L. reported to SVHS administrators that CRONIN took him to the wrestling room and engaged in misconduct.  Immediately following G.L.'s report to the school's administration, CRONIN planted a "crack pipe" in G.L.'s pocket and then arranged for a hall monitor to search G.L. and "discover" the pipe.  CRONIN then stated to G.L. "*that's what you get for telling on me.*"

57.   Because of the nature of CRONIN's abuse, which occurred in the school setting and while CRONIN professed to be teaching, mentoring, and coaching G.L., and because of G.L.'s age, disabilities and embarrassment, G.L. did not immediately report the full extent CRONIN's abuse.

58.   As a result of being sexually abused at school, G.L. experienced shame, embarrassment, confusion, fear and anger and exhibited severe anxiety, stress, aggression and inability to concentrate, suffered chronic nightmares, sleep disruption and regression in his functioning. G.L. no longer wanted to attend school, frequently displayed extreme anger and anxiety and was subjected to further bullying at SVHS for being a "snitch" in reporting CRONIN's abuse to law enforcement.

59.   G.L. continues to experience extreme anger, anxiety, stress and fear as a result of the misconduct of the Defendants, and each of them, including CRONIN's sexual abuse and CCSD, ANZALONE and ALFONZO's failure to act, intervene, or

prevent the abuse.  As a result of the conduct of Defendants and each of them, G.L. continues to struggle with significant anxiety and anger issues, suffers from nightmares and continues to have difficulty sleeping. The severe abuse of G.L. as herein alleged has and will continue to cause permanent psychological harm.

60.     As a proximate result of the actions of Defendants, and each of them, G.L. has suffered unjustifiable physical pain and mental suffering.  As a result of Defendants' conduct, G.L. will require ongoing psychological treatment to address the sexual traumas he has experienced.

61.     Because of G.L.'s disabilities, his age at the time of the abuse, and the nature of CRONIN's abuse as described herein, G.L. does not have the capacity to recognize that he is injured, and that his permanent injuries were caused by Defendants' conduct.

## CCSD's RESPONSE TO REPORTS OF CRONIN's SEXUAL, PHYSICAL AND EMOTIONAL ABUSE OF DISABLED STUDENTS

62.     On information and belief, CCSD has the *de facto* policy and practice of concealing, failing to document or report and intentionally under-reporting incidents in which CCSD employees violate the rights of special education students. Such incidents are often concealed from the Department of Education ("DOE") and parents of student victims.  On information and belief, this district-wide policy and practice is longstanding, ongoing, and amounts to ratification of the perpetrators' abuse and efforts by administrators to conceal the severity and frequency of the abuse from the DOE and parents.

63.     On information and belief, CCSD does not investigate or discipline administrators involved in concealing, failing to report and under-reporting employees' violations of disabled students' rights. The effect of this policy and practice, and the ratification of misconduct giving rise to violations, *de facto* perpetuates, condones and allows ongoing abuse and further rights violations.

64.     On information and belief, after CCSD was on notice of CRONIN's sexual abuse of disabled students which constituted denial of rights violations, CCSD failed to investigate and discipline CRONIN to deter him from committing further sexual abuse of students including Plaintiffs, repeatedly failed to comply with state laws and district policies regarding the prompt documentation and reporting of CRONIN's sexual abuse, and intentionally concealed information regarding CRONIN's sexual abuse of disabled students in his care, including Plaintiffs, from WARREN, JOW and LACUESTA and from law enforcement.

65.     On information and belief, after CCSD was on notice of CRONIN's sexual abuse of disabled students which constituted denial of rights violations, CCSD further failed to notify the DOE as required and failed to discipline SVHS administrators including ANZALONE and ALFONZO for their mishandling of CRONIN's misconduct.

## Allegations Specific to CCSD Policies and Practices

66.     On information and belief, CCSD had multiple "written" policies, regulations, rules, and practices which contributed to the incidents giving rise to the constitutional violations in this case. Multiple persistent and widespread customs and practices of CCSD personnel also contributed. Some of the entrenched customs and practices of CCSD at issue consist of employees' persistent failure to follow written policies, regulations, rules, or laws, as well as employees who go through the motions of complying with the letter of written policies, regulations, rules, or laws while violating the substantive intent. These customs and practices were so widespread as to be the functional equivalent of CCSD policy.

## CCSD's Practices Ratify Abuse of Disabled Students

67.     On information and belief, CCSD fosters a culture of concealment of abuse of disabled students through the practices of each division of CCSD with a responsibility to document, report, investigate, retrain, and discipline employees

who sexually, physically and emotionally abuse disabled students. The top down concealment of abuse from the DOE and victims' parents is ratified by CCSD by its failure to report, investigate, retrain and/or discipline employees and administrators who are known to the District to have concealed abuse and violations of disabled students' rights.  On information and belief, the failure to document, report, investigate, retrain and/or discipline administrators and employees who conceal abuse of special needs students creates an environment that leads to more abuse by CCSD employees like CRONIN against special needs students, including E.A., D.J., G.L..

68.     CCSD's Office of Compliance and Management ("OCM") acts as the Superintendent's designee to comply with the statutory requirement to report all incidents where employee misconduct violates the rights of a special needs student to the DOE and to establish a Corrective Action Plan ("CAP") to retrain the offending employee(s) so future violations do not occur.

69.     On information and belief, practices within OCM foster a culture of deliberate indifference to the sexual, physical and/or emotional abuse of disabled students and lead directly to the constitutional violations complained of in Plaintiffs' complaint.  These practices amount to ratification of the abuser's misconduct and of the administrators' concealment of the misconduct from parents and the state DOE, allowing CCSD's *de facto* policies to flourish.

70.     On information and belief, CRONIN's sexual, physical and/or emotional abuse of E.A., D.J., G.L. and their classmates violated Plaintiffs' rights and OCM was required to document, report and investigate each of the incidents fully and completely at the outset, but they failed to do so.

71.     On information and belief, OCM's acquiescence in the pattern of unconstitutional misconduct, including its failure to investigate credible reports of sexual, physical and emotional abuse by CRONIN, all of which constituted

violations of disabled students' rights, and their failure to comply with the District's statutory obligation to report all violations and take steps to prevent future violations, constituted ratification of the violations of the rights of E.A., D.J. and G.L..

72.     On information and belief, CRONIN was acting pursuant to the District's policy of permitting, allowing and, in effect, condoning and encouraging the violations of disabled students rights at the time he sexually abused E.A., D.J., and G.L..  The negligent failure of OCM to report CRONIN's sexual abuse at the outset or intervene to prevent further abuse of Plaintiffs ratified the misconduct and allowed additional abuse to occur.

73.     On information and belief, ANZALONE, ALFONZO and OCM employees were each acting pursuant to a district wide policy and practice that ratified concealment of unconstitutional use of force by District staff on disabled students.  On information and belief, this policy was the moving force behind the unconstitutional violations of E.A., D.J., G.L. by CRONIN.

74.     CCSD's Employee Management Relations Department ("EMR") is the division of CCSD responsible to receive, track and respond to reports of employee misconduct and to determine appropriate discipline.  On information and belief, CCSD has no policy requiring administrators who learn that a district employee has sexually, physically and/or emotionally mistreated a disabled student to report the incident to EMR.

75.     On information and belief, CCSD has no policy that requires EMR to report to OCM incidents it learns of where a CCSD employee has sexually, physically and/or emotionally mistreated a disabled student.

76.     On information and belief, the failure of CCSD to have policies requiring all incidents of sexual, physical and/or emotional abuse of disabled students by employees to be reported to both EMR and OCM creates a practice

where known abuse of disabled students by staff is under-reported, known violations of disabled students' rights are concealed from the DOE and offending employees are not retrained or disciplined, all of which leads to continued abuse and violations.

## CCSD Policies Prevent Accurate Record Keeping and Appropriate District Response

77.     On information and belief, CCSD does not track all reports of sexual, physical and/or emotional abuse of special education students by CCSD staff and has no centralized location where such information is maintained or shared among the District's divisions. This practice prevents analysis of the causes of such misconduct, prevents patterns of abuse from being identified, prevents effective discipline of employees that have been reported to have physically abused disabled students and increases the likelihood that perpetrators will continue to abuse and victimize vulnerable disabled students in the future.

78.     CCSD Policy 1213 and Regulation 1213.1 require that complaints be submitted, investigated, and resolved at the lowest levels in the "chain of command," and state that any concerns received by board members or the District's superintendent will not be considered, but instead will be passed on to appropriate person lower in the command structure for handling. These policies, and the manner in which they are implemented, create a decentralized system of obtaining, investigating, and resolving complaints. As a result, the individuals at the "top" of the system prevent themselves from hearing complaints, or knowing whether they were properly dealt with, thereby allowing themselves to have "plausible deniability" as to the breadth of problems within the system. Furthermore, by insisting that complaints of abuse by teachers be handled by the principal of the school, CCSD creates a clear conflict of interest, in which the person investigating and responding to complaints has strong motivation to minimize or conceal

misconduct by teachers under their supervision, in order to make their own job easier, by not losing staff to suspension or termination, and out of concern that the situation might reflect negatively upon themselves, resulting in poor performance evaluations and financial consequences.

## CCSD Regulations Prohibit Anonymous Reporting

79. CCSD Regulation R-5152 prohibits employees of CCSD from making reports to authorities regarding suspected child abuse without also informing school administrators. On information and belief, policies such as these have a chilling effect on the reporting of abusive conduct committed by employees because by making a report, an employee places himself or herself at risk of retaliation and peer backlash. The Nevada State Legislature itself recognized the importance of the availability of the option of reporting anonymously, in its passage of the Safe and Respectful Learning Environment legislation, when it stated: "The ability to anonymously report information about dangerous, violent or unlawful activities, or the threat of such activities [...] is critical in preventing, responding to and recovering from such activities." NRS 388.1454.

## CCSD's Practices Discourage Reporting of Abuse by Employees

80. On information and belief, CCSD supervisory personnel have a permanent and well-settled custom and practice of discouraging employees from reporting abuse of students by fellow employees. On information and belief, this custom and practice is enforced by displaying antagonism toward employees when they do report; by failing to act on the reports, thereby creating a sense of hopelessness, helplessness and demoralization in the reporting employees; and by tolerating the peer approbation displayed against employees who do report.

## CCSD Policies Threaten Legal Consequences for Employees Who Disclose Abuse to Parents or Media

81. CCSD Policy 1213 and CCSD Regulation 1213.1 require that any

disciplinary action regarding an employee, and any concerns or complaints made about an employee be kept confidential.  They also warn employees of the possibility that they could expose themselves to litigation by speaking about concerns. No parallel warning regarding the potential legal consequences of silence or concealment are included.

82.     On information and belief, these policies, and the manner in which they are implemented, discourage employees from reporting abusive conduct of fellow employees against students, and explicitly make it the policy of CCSD to conceal from parents of students those instances when their children's teachers have engaged in abusive conduct toward students, even when that conduct has been confirmed. In its communications with the public and with individual parents, it is the policy of CCSD to venerate the privacy of abusive and allegedly abusive employees above all other concerns, including its obligations for the safety of its students, and its obligations as a public agency to provide information regarding its function to members of the public and elected officials so that proper oversight can be exercised.

### CCSD's Practices Fail to Ensure Proper Training

83.     On information and belief, CCSD has a wide-spread, permanent and well-settled custom and practice of failing to ensure that special education teachers and their classroom assistants are properly qualified and trained to respond appropriately to the behaviors of students with disabilities. On information and belief, current and former employees of CCSD received little to no training regarding the appropriate response and handling of instances of sexual, physical and/or emotional abuse of disabled students by CCSD staff.

84.     On information and belief, CCSD has a wide-spread, permanent and well-settled custom and practice of failing to report to the DOE known incidents of sexual, physical and emotional abuse that have violated the rights of disabled

students and failing to comply with their mandatory duty to report the abuse to law enforcement so that the abuse stops and future violations do not reoccur.

85.     On information and belief, there is a long history of CCSD teachers and other employees sexually, physically and emotionally abusing disabled students who are unable to fully communicate or report what is happening to them, but CCSD has failed to take steps to address the problem, to improve the means to prevent abuse or to take steps to ensure that CCSD employees who engage such abuse are retrained, disciplined and/or removed from the District to ensure students' safety.

## FIRST CLAIM FOR RELIEF
### Violation of Constitutional Rights, 42 U.S.C. § 1983
### All Plaintiffs vs. CRONIN, ANZALONE,  ALFONZO and CCSD

86.     Plaintiffs refer to, and incorporate by reference, all of the preceding paragraphs as though fully set forth herein.

87.     Plaintiffs, and each of them, had a constitutional right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures and to be secure in his or her person and to maintain his or her bodily integrity against unreasonable assaults on his or her person.

88.     On information and belief, CRONIN, ANZALONE, and/or ALFONZO violated the rights of Plaintiffs under the Fourth Amendment and Fourteenth Amendment by using unjustified and unreasonable force against Plaintiffs and/or by failing to prevent it.

89.     On information and belief, CRONIN's, ANZALONE's, and/or ALFONZO's conduct was objectively unreasonable under the circumstances and in light of the educational objectives Plaintiffs were trying to achieve.

90.     On information and belief, CRONIN's conduct in physically seizing and sexually abusing Plaintiffs unlawfully subjected them to excessive, unreasonable,

and unnecessary physical force.

91.     On information and belief, ANZALONE and ALFONZO violated the rights of Plaintiffs under the Fourth and Fourteenth Amendments to the U.S. Constitution by actions, including but not limited to, acting with deliberate indifference to the risk of harm to Plaintiffs from CRONIN.

92.     On information and belief, Plaintiffs allege Defendants ANZALONE and ALFONZO personally participated in the deprivation of their constitutional rights by failing to act in response to allegations of serious child abuse, and through their deliberate indifference to the fact that abuse was occurring.

93.     On information and belief, ANZALONE and ALFONZO personally participated in the deprivation of constitutional rights of Plaintiffs, and each of them, by their failure to act in response to prior reports of ongoing sexual, physical and emotional abuse of disabled students by CRONIN.

94.     On information and belief, the actions of CRONIN, ANZALONE, ALFONZO and other CCSD administrators and employees, as described herein, were objectively unreasonable, willful and wanton, in light of the facts and circumstances.

95.     On information and belief, CCSD violated the rights of Plaintiffs, and each of them, under the Fourth Amendment by its failure to maintain adequate policies or conduct adequate training to prevent violations of the constitutional rights of disabled students. On information and belief, CCSD had multiple "written" policies, regulations, rules, and practices which contributed to the occurrence of the incidents which gave rise to the constitutional violations in this case.  Multiple persistent and widespread customs and practices of CCSD gave rise to the constitutional violations alleged herein. Violations such as the ones inflicted on Plaintiffs were an obvious risk of the procedures adopted by CCSD and its policymakers. CCSD's acts and omissions constitute deliberate indifference.

96.     On information and belief, CCSD also violated the rights of Plaintiffs, and each of them, under the Fourth Amendment when it displayed deliberate indifference to the demonstrated propensity of CRONIN to violate the constitutional rights of citizens in the manner that Plaintiffs' rights were violated.

97.     Because of Plaintiffs' disabilities, their age at the time of the abuse, the nature of CRONIN's abuse as described herein, and due to Defendants' repeated failure to comply with state laws and district policies regarding the prompt documentation and reporting of CRONIN's sexual abuse, concealment of information regarding CRONIN's sexual abuse of disabled students in his care, and failure to inform other victims or their parents and guardians including WARREN, JOW and LACUESTA of their own repeated failures to intervene and failure to inform law enforcement, Plaintiffs were unaware of Defendants' violation of their constitutional rights, including that Defendants acted pursuant to CCSD's unofficial policies, practices and customs, and that Defendants knowingly refused to intervene to stop CRONIN's behavior as alleged herein, until approximately March of 2021 when Plaintiff's counsel agreed to jointly represent them.

98.     On information and belief, as a proximate result of the violations alleged hereinabove, Plaintiffs have suffered damages, including special and general damages, according to proof.

**SECOND CLAIM FOR RELIEF**
**Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794**
**All Plaintiffs vs. CCSD**

99.     Plaintiffs incorporate and reallege by reference all the foregoing paragraphs as if they were fully set forth herein.

100.    Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794 ("Section 504"), and the regulations promulgated thereunder prohibit discrimination against persons with disabilities. Section 504 prohibits the exclusion

from the participation in, or being denied the benefits of, or being subjected to discrimination under, any program or activity receiving Federal financial assistance.

101.   Plaintiffs are informed and believe and thereon allege that CCSD is and has been at all relevant times the recipient of federal financial assistance, and that part of that financial assistance has been used to fund the operations, construction and/or maintenance of the specific public facilities described herein and the activities that take place therein.

102.   On information and belief, by subjecting Plaintiffs to ongoing sexual abuse, Plaintiffs were denied the benefit of their attendance at CCSD and were subjected to discrimination. Non-disabled children who could have promptly reported that they were being abused by CRONIN were not subjected to similar acts of abuse.

103.   On information and belief, by its actions and inactions in denying equal access to educational services and by subjecting Plaintiffs to a hostile educational environment, CCSD has violated their rights under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the regulations promulgated thereunder.

104.   On information and belief, CRONIN engaged in sexual abuse, which included physical, emotional, and psychological abuse as herein alleged, and said Defendants were deliberately indifferent to the risk that their actions would deprive Plaintiffs of equal and meaningful access to their education.

105.   On information and belief, CCSD is vicariously liable for the actions or inactions of its employees. ANZALONE, ALFONZO and other CCSD administrators and employees were deliberately indifferent to the reported abuse committed by CRONIN. They had actual knowledge of the ongoing abuse and knew that CRONIN was likely to continue abusing students including Plaintiffs, but negligently failed

to act upon that knowledge.

106.    On information and belief, this deliberate indifference by employees of CCSD gives rise to respondeat superior liability of CCSD.

107.    Because of Plaintiffs' disabilities, their age at the time of the abuse, the nature of CRONIN's abuse as described herein, and due to Defendants' repeated failure to comply with state laws and district policies regarding the prompt documentation and reporting of CRONIN's sexual abuse, concealment of information regarding CRONIN's sexual abuse of disabled students in his care, and failure to inform the parents and guardians of disabled victims, including WARREN, JOW and LACUESTA of their own repeated failures to intervene and failure to inform law enforcement, Plaintiffs were unaware that they were denied the benefit of their attendance at CCSD and were subjected to discrimination until approximately March of 2021 when Plaintiff's counsel agreed to jointly represent them.

108.    As a direct and proximate result of CCSD's failure to comply with their duty under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 and the regulations promulgated thereunder, Plaintiffs suffered damages as described herein.

### THIRD CLAIM FOR RELIEF
**Sexual Assault**
**All Plaintiffs vs. Defendants CRONIN and CCSD**

109.    Plaintiffs incorporate and reallege by reference all the foregoing paragraphs, as if they were fully set forth herein.

110.    In committing the acts alleged herein, CRONIN acted with intent to commit sexual assault on each Plaintiffs' person.

111.    CRONIN knew that Plaintiffs were mentally, emotionally and/or physically incapable of resisting or understanding the nature of CRONIN's conduct.

112.    CCSD is vicariously liable for CRONIN's acts of sexual assault

pursuant to Nev. Rev. Stat. §41.745(1).

113.    As a direct and proximate result of CRONIN's sexual assault, Plaintiffs have suffered damages as alleged herein.

## FOURTH CLAIM FOR RELIEF
### Criminal Violations Motivated by Characteristics of Victim, NRS §§ 41.690 and 41.1395
### All Plaintiffs vs. Defendant CRONIN

114.    On information and belief, the use of force, as alleged herein, by CRONIN against Plaintiffs constituted willful violations of NRS §§§ 200.400 (battery), 200.366 (sexual assault) and 200.508 (abuse/neglect).

115.    On information and belief, CRONIN's willful violations of these provisions as they relate to Plaintiffs were motivated by the actual or perceived disabilities of said Plaintiffs.

116.    As a direct and proximate result, Plaintiffs have suffered damages as alleged herein.

## FIFTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress
### All Plaintiffs vs.
### Defendants CRONIN, ANZALONE, ALFONZO and CCSD

117.    Plaintiffs incorporate and reallege by reference all the foregoing paragraphs, as if they were fully set forth herein.

118.    On information and belief, the actions of Defendants as alleged herein were extreme and outrageous, and were conducted with reckless disregard for causing Plaintiffs emotional distress.

119.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered emotional distress and damages as alleged herein.

## SIXTH CLAIM FOR RELIEF
### Negligence
### All Plaintiffs vs.
### Defendants CRONIN, ANZALONE, ALFONZO and CCSD

120.     Plaintiffs incorporate and reallege by reference all the foregoing paragraphs, as if they were fully set forth herein.

121.     Defendants, and each of them, owed a duty to exercise reasonable care in their interactions with Plaintiffs.  A special relationship existed between each of Defendants and Plaintiffs, which arose from the mandatory character of school attendance and the comprehensive control over students exercised by school personnel.

122.     Defendant CRONIN had a duty to refrain from sexually abusing disabled students, including Plaintiffs.

123.     Defendants ANZALONE, ALFONZO and/or other CCSD employees owed a duty to exercise reasonable care to prevent harm to Plaintiffs at the hands of anyone, including CRONIN, negligently or intentionally.  Furthermore, Defendants ANZALONE, ALFONZO and/or other CCSD employees had a duty to prevent further harm to disabled students when they received, upon information and belief, reports from aides that CRONIN had engaged in highly inappropriate behavior and sexual abuse of disabled students.

124.     CCSD is liable for injuries proximately caused by the acts or omissions of its employees acting within the scope of their employment. *See* NRS 41.031, NRS 41.038.

125.     All employees, including teachers, instructional aides, and administrative officers of CCSD are mandatory reporters as defined by NRS 432B.220. As such, they were under a mandatory duty to report to a law enforcement agency or to an agency which provides child welfare services whenever any of them, in his or her professional or occupational capacity, knew or had reasonable cause to believe that had a child had been the victim of child abuse or neglect. A mandatory reporter is required to report suspected child abuse as soon as reasonably practicable, but not later than 24 hours after the person knows or has

reasonable cause to believe that the child has been abused or neglected.

126.   On information and belief, Defendant CRONIN breached his duty to exercise reasonable care when interacting with Plaintiffs by sexually abusing them, thereby engaging in child abuse.  Defendants ANZALONE, ALFONZO, and/or other CCSD employees breached their duty to Plaintiffs by failing to prevent harms to said Plaintiffs; by failing to train CCSD staff that they are mandatory reporters under state law and/or that they were required to report suspected child abuse immediately to the police as required by Nevada law; and/or by failing to inform Plaintiffs' parents of suspected child abuse when Defendants first learned of it.

127.   As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered damages as alleged herein.

## SEVENTH CLAIM FOR RELIEF
### Negligent Hiring, Training, Supervision and Retention
### All Plaintiffs vs.
### Defendants ANZALONE, ALFONZO and CCSD

128.   Plaintiffs incorporate and reallege by reference all the foregoing paragraphs, as if they were fully set forth herein.

129.   On information and belief, CRONIN was unfit to perform the work for which he was hired to do.

130.   On information and belief, ANZALONE, ALFONZO and/or other CCSD supervisory employees knew or should have known that CRONIN was sexually abusing students at SVHS either by personally observing the abuse, by reports received from other school employees, and/or by providing reasonable supervision of its students and/or its employees.

131.   On information and belief, ANZALONE, ALFONZO and/or other CCSD supervisory employees' negligence in supervising and retaining CRONIN was a substantial factor in causing harm to Plaintiffs.

132.   As a direct and proximate result of Defendants' negligent supervision

of CRONIN, Plaintiffs have incurred damages as alleged herein.

**EIGHTH CLAIM FOR RELIEF**
**Enhanced Damages for Injury or Loss Suffered by a**
**Vulnerable Person, NRS 41.1395**
**All Plaintiffs vs. Defendant CRONIN**

133.    Plaintiffs incorporate and reallege by reference all the foregoing paragraphs, as if they were fully set forth herein.

134.    At all times relevant to this action, each Plaintiff was a vulnerable person as that term is defined by NRS 41.1395.

135.    In committing the acts alleged herein, CRONIN acted with recklessness, oppression, fraud and/or malice as that term is defined by NRS 41.1395.

136.    Accordingly, Plaintiffs, and each of them, are entitled to double damages and attorneys' fees and costs against CRONIN under NRS 41.1395.

**NINTH CLAIM FOR RELIEF**
**Violation of the Constitution of the State of Nevada**
**All Plaintiffs vs. Defendant CCSD**

137.    Plaintiffs incorporate and reallege by reference all the foregoing paragraphs, as if they were fully set forth herein.

138.    The State of Nevada, along with its political subdivisions, has waived its immunity from liability and consented to have its liability determined in accordance with the same rules of law as are applied to civil actions against natural persons or corporations.

139.    At all times relevant to the allegations herein, Defendant CCSD was a political subdivision of the State of Nevada within the meaning of NRS 354.474.

140.    Article XI, Section 2 of the Nevada Constitution allows for the establishment of a uniform system of common schools, of which Defendant CCSD and SVHS are members and participants.

141.    Article XI, Section 5 of the Nevada Constitution states that teachers in said schools shall be required to take and subscribe to the oath in Article XV of the Nevada Constitution.  Article XV, Section 2 states, *inter alia*, that teachers shall support, protect, and defend the Constitution and government of the State of Nevada and will well and faithfully perform all duties of the office of which one is about to enter.

142.    Article I, Section 8(2) of the Nevada Constitution states that no person shall be deprived of life, liberty, or property, without due process of law.

143.    At all times relevant hereto, ANZALONE, ALFONZO and/or other CCSD employees, violated the Constitution of the State of Nevada by causing Plaintiffs to be deprived of the rights, privileges, and/or immunities secured in the Constitution of the State of Nevada, as alleged herein, and by failing to adhere to their oath of office.

144.    The actions of ANZALONE, ALFONZO and/or other CCSD employees as alleged herein gives rise to *respondeat superior* liability of CCSD.

145.    As a direct and proximate result of Defendants' Constitutional violations as alleged herein, Plaintiffs have suffered damages as alleged herein.

## JURY DEMAND

Plaintiffs hereby demand that this matter be tried by a jury.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment as follows:

1.  Compensatory damages to Plaintiffs for pain, suffering, injury, emotional distress and for medical expenses, past and future;

2.  Punitive damages against Defendants CRONIN, ANZALONE and ALFONZO as authorized under NRS 41.690;

3.  Double Damages against each Defendant causing Plaintiffs' harm under NRS 41.1395;

4. Attorneys' fees and costs as authorized under 42 U.S.C. § 1983, 29 U.S.C. § 794, and NRS 41.690 and 41.1395;

5. Prejudgment interest and post judgment interest as allowed by law; and

6. Such other and further relief as the court deems just and proper.

Dated: October 19, 2022           **PANISH SHEA BOYLE RAVIPUDI LLP**

By: */s/ Adam Ellis*
    RAHUL RAVIPUDI
    IAN SAMSON
    ADAM ELLIS
    Attorneys for Plaintiffs

*To be admitted pro hac vice:*
KHALDOUN A. BAGHDADI, SBN 190111
VALERIE N. ROSE, SBN 272566
KATHERINE S. CONNOLLY SBN 343524
WALKUP, MELODIA, KELLY & SCHOENBERGER
650 California Street, 26th Floor
San Francisco, CA 94108
Tel: (415) 981-7210